948 So.2d 1067 (2007)
In re John B. WHITAKER.
No. 2006-B-2222.
Supreme Court of Louisiana.
February 2, 2007.
*1068 Charles B. Plattsmier, Baton Rouge, Julie B. White, for Applicant.
John B. Whitaker, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, John B. Whitaker, an attorney licensed to practice law in Louisiana.

INTRODUCTION
These attorney disciplinary charges reach the court in a somewhat unusual posture, as the alleged misconduct occurred while respondent was serving in the office of judge of the Tenth Judicial District Court for the Parish of Natchitoches, State of Louisiana. During respondent's tenure as judge, the Judiciary Commission of Louisiana commenced an investigation into allegations of judicial misconduct on his part; however, the investigation was not completed prior to respondent's retirement from the bench in 1999. Pursuant to Supreme Court Rule XXIII, § 23 and Supreme Court Rule XIX, § 6(B), the matter was transferred to the ODC. After investigation, the ODC filed the instant formal charges.

UNDERLYING FACTS

Count I
On December 2, 1997, respondent sent a letter to the Chief Disciplinary Counsel in support of a disbarred lawyer who was applying for readmission to the practice of law. The letter of recommendation was written on respondent's official court stationery. Such conduct is a violation of Canon 2B (a judge shall not lend the prestige of judicial office to advance the private interest of the judge or others) of the Code of Judicial Conduct.

Count II
During a sworn statement taken by the Judiciary Commission's Office of Special Counsel in February 1999, respondent admitted that while he was a judge he frequently issued orders and directives, both verbal and written, instructing the Natchitoches Parish Sheriff's Office to perform actions when there were no cases pending, no motions or rules filed, and no hearings set.[1] Such conduct is a violation of Canons *1069 1 (a judge shall uphold the integrity and independence of the judiciary), 2 (a judge shall avoid impropriety and the appearance of impropriety in all activities), and 3 (a judge shall perform the duties of office impartially and diligently) of the Code of Judicial Conduct.

DISCIPLINARY PROCEEDINGS
In 2005, the ODC filed two counts of formal charges against respondent, alleging that his conduct constituted a violation of Rule 8.4(d) (conduct prejudicial to the administration of justice) of the Rules of Professional Conduct, as well as the relevant canons of the Code of Judicial Conduct.
Respondent filed an answer to the formal charges and admitted that he wrote a letter of recommendation on his official court stationery; however, he said that he would not have done so had he "known that the code of ethics had been amended to prohibit letters from judges to the Disciplinary Board." Concerning the allegation that he improperly issued orders directing the sheriff to perform certain acts, respondent admitted that he issued such orders, but claimed that his doing so "may or may not be an ethics violation." Respondent further explained:
Orders and directives to the Sheriff, on most occasions, were initiated by the Sheriff, whose office these victims came to for help. I would be asked to provide the Sheriff with something in writing if what they wanted to do was proper. To the best of my knowledge, I never issued an authorization to the Sheriff to do anything that he did not already have the authority to do. Most of these orders involved the protection of women who had been forced out of their homes while they returned to their homes to retrieve their medications and a few clothing and personal items for themselves and/or their children. A few of the authorizations dealt with the return of stolen property and the return of children to their custodial parent. In all of these instances, no unresolved issue of ownership or custody existed.

Formal Hearing
This matter proceeded to a formal hearing. The ODC introduced documentary evidence in support of the formal charges and called several witnesses to testify concerning the allegations of Count II, including Brad Raynes, a former deputy of the Natchitoches Parish Sheriff's Office; Boyd Durr, the former sheriff of Natchitoches Parish; and Victor Jones, the current sheriff. Respondent testified on his own behalf and on cross-examination by the ODC.

Hearing Committee Recommendation
At the conclusion of the hearing, the hearing committee issued its report. The committee noted that the underlying facts are not in dispute.
In Count I, respondent admitted that he wrote a letter to the Chief Disciplinary Counsel supporting a lawyer's readmission to the bar. The letter was written on respondent's official letterhead and in his capacity as judge of the Tenth Judicial District Court.
In Count II, the exhibits introduced at the hearing and the testimony of all of the witnesses confirmed that while respondent was a judge he issued orders and directives, both verbal and written, which instructed the Natchitoches Parish Sheriff's Office to perform actions when there *1070 were no causes pending, no motions or rules filed, and no hearing set. These directives and orders covered a wide range of situations, including child custody, community property disputes, return of separate property, release of a vehicle from a mechanic's shop, the arrest of a probationer, return of a vehicle alleged to be held by someone who did not have authority to hold said vehicle, and others. The sheriff testified that at times he felt he needed orders from respondent to comply with requests being made by citizens and that he would refer those citizens to respondent's office; if respondent gave the sheriff a verbal or written order or directive, he would then attempt to carry it out. On occasion, the sheriff would request a written authorization from respondent, believing that he needed additional authority before he could perform certain acts. It was respondent's position that the directives and orders he issued were not in violation of the Code of Judicial Conduct since the sheriff's office already had authority to perform the actions that were being taken.
Based on these findings, the committee determined that respondent violated Rule 8.4(d) of the Rules of Professional Conduct in both Counts I and II. With regard to Count II, the committee found that respondent violated his duties to the public and to the legal system, and that he acted knowingly. The committee further found that respondent's "actions resulted, if not in the actual injury to individuals, certainly had the potential for injury, and the loss of personal freedom and property." The committee did not find that respondent's actions "were taken for personal gain."
Based on this reasoning, the committee recommended that respondent be suspended from the practice of law for ninety days "in the event that he seeks active status as a practicing attorney at any point in the future."[2]
The ODC objected to the leniency of the sanction recommended by the committee, arguing that disbarment is appropriate.

Disciplinary Board Recommendation
With regard to Count I, the disciplinary board found that respondent wrote a letter on his official stationery to the Chief Disciplinary Counsel on behalf of a lawyer who was seeking readmission to the bar. At the time of the letter, Canon 2B of the Code of Judicial Conduct prohibited a judge from providing letters of recommendation on official stationery. The board concluded respondent's actions in writing the letter on court letterhead clearly violated Canon 2B by lending the prestige of his office to further the cause of an individual lawyer.
As to Count II, the board determined that respondent engaged in acts that circumvented the legal system. It found respondent ordered citizens to be picked up by the sheriff and detained without following the procedure prescribed by the Louisiana Code of Civil Procedure relative to civil contempt. Likewise, it found he sidestepped the Louisiana Code of Criminal Procedure regarding the proper issuance of arrest warrants and the proper handling of probation revocation matters. Although it recognized respondent had jurisdiction to handle custody matters, it noted he failed to require compliance with the law regarding alleged violations of custody orders and related issues. The board agreed with the hearing committee that there is no evidence of bad faith on respondent's part, but citing In re: Quirk, 97-1143 *1071 (La.12/12/97), 705 So.2d 172, found his continued and repeated issuance of improper orders and directives to the sheriff formed a pattern of legal error, which amounts to judicial misconduct.
By improperly writing a letter of recommendation, disregarding lawful procedure, and issuing directives and orders based on contact with interested persons or the assertions of the sheriff, the board found that respondent failed to maintain high standards of conduct, failed to avoid impropriety, and failed to perform the duties of his office impartially, all in violation of Canons 1, 2, and 3 of the Code of Judicial Conduct and Rule 8.4(d) of the Rules of Professional Conduct.
The board determined that respondent knowingly violated duties owed to the legal system and to the public. There was no significant reported injury directly related to respondent's misconduct; however, in some instances, respondent's failure to allow members of the public to exercise their procedural due process rights caused inconvenience and eroded confidence in the judicial system. Furthermore, the potential for the loss of personal freedom and property existed. Under the ABA's Standards for Imposing Lawyer Sanctions, the board found the baseline sanction for respondent's misconduct is suspension.
In aggravation, the board recognized that respondent has a prior disciplinary record as a judge.[3] In mitigation, the board agreed with the committee that respondent lacked a dishonest or selfish motive.
Considering all these factors, the board recommended that respondent be suspended from the practice of law for one year and one day and that he be assessed with all costs and expenses of these proceedings.
The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Our review of the record indicates the underlying facts are largely undisputed. By respondent's own admission, he wrote a letter of recommendation on his official court stationery and frequently issued ex parte directives to the Natchitoches Parish Sheriff's Office. Such conduct is clearly a violation of the Canons of the Code of Judicial Conduct and, by extension, constitutes conduct prejudicial to the administration of justice for purposes of Rule 8.4(d) of the Rules of Professional Conduct.
*1072 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The most egregious misconduct committed by respondent in this case involved his issuance of ex parte orders and directives to the sheriff's office, in blatant disregard of the due process protections set out in our law. We find it particularly disturbing that in at least one instance, respondent personally benefitted from this practice when he ordered the sheriff to retrieve his girlfriend's car from a local garage. Although there might not be evidence in the record of palpable harm resulting from respondent's actions, the potential for abuse in this scenario is patently obvious.
In aggravation, we recognize respondent's prior judicial discipline, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. The sole mitigating factor present is respondent's lack of a dishonest or selfish motive.
Our prior cases involving similar judicial misconduct provide some guidance in determining an appropriate sanction. In In re: Fuselier, 02-1661 (La.1/28/03), 837 So.2d 1257, an Oakdale City Court judge engaged in a pattern and practice of legal error in not following the law. Judge Fuselier held a witness in contempt for failing to appear in court pursuant to a subpoena, even though the witness had not been properly subpoenaed. He also wrote to the witness' employer to complain, leading to the termination of her employment. Judge Fuselier abused his judicial authority by conducting arraignments and accepting guilty pleas in criminal cases when no prosecutor was present. He also engaged in ex parte communications by accepting requests to "fix" traffic tickets and/or other offenses by having a court employee contact the District Attorney or City Attorney to relay the messages. In addition, Judge Fuselier instituted an improper procedure for collecting worthless checks whereby merchants would simply deliver NSF checks to a court employee who would prepare demand letters on court stationery. If the maker of the check failed to pay the amount of the dishonored check plus collection fees, the clerk would prepare an arrest warrant and prepare a probable cause affidavit on behalf of the merchant, using a facsimile signature stamp, without the merchant ever having to review the affidavit or attest to the facts stated therein. Arrests were made as a result of the issuance of these warrants. Considering the numerous prior complaints that Judge Fuselier had exceeded his role as a neutral arbiter, and also considering that he had not used his position for personal financial gain, we accepted the Judiciary Commission's recommendation of a 120-day suspension.
In In re: Landry, 01-0657 (La.6/29/01), 789 So.2d 1271, a justice of the peace improperly entered a default judgment in the amount of $1,800 against a small claims defendant who had never been properly served, without the plaintiff establishing a prima facie case, and without a hearing. Six prior complaints had been filed against Justice of the Peace Landry. Considering his intentional disregard of *1073 lawful procedure which struck at the core of a defendant's fundamental right to be heard, along with his prior disciplinary complaints, we accepted the Judiciary Commission's recommendation of a six-month suspension.
The ODC cites In re: Jefferson, 99-1313 (La.1/19/00), 753 So.2d 181, in support of its argument that respondent should be disbarred. Judge Jefferson, a Monroe City Court judge, was removed from the bench for his reckless and bad faith handling of contempt proceedings, unauthorized practice of law, and failure to cooperate with an appointed supernumerary judge. On two occasions, Judge Jefferson improperly held a city prosecutor in contempt, resulting in the prosecutor's detention. He improperly banned the prosecutor from his courtroom, then dismissed the charges in forty-one cases assigned to that prosecutor when the prosecutor did not appear in court. He also abused his authority in interrogating the Clerk of Court regarding paychecks and other administrative matters in a belligerent and argumentative manner, holding her in contempt for failing to answer and causing her to be transported to jail and booked. Judge Jefferson also continued to represent a plaintiff in a legal matter that he had handled as an attorney prior to assuming the bench and deliberately disobeyed the orders of the supernumerary judge appointed to handle administrative matters in his court. We noted Judge Jefferson's persistent pattern of reckless, disrespectful, injudicious, and abusive behavior in our decision to remove him from the bench.
Considering these cases, we find that respondent's misconduct does not approach the seriousness of the misconduct involved in Jefferson, but rather is closer to that seen in the Fuselier and Landry matters. While serving as a judge, respondent demonstrated a pattern of failing to comply with the law and frustrated the procedural protections at the heart of our legal system. Taking into account all the factors in this case, particularly respondent's prior disciplinary record, we conclude the appropriate discipline is a one year and one day suspension from the practice of law.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that John Barclay Whitaker, Louisiana Bar Roll number 13408, be suspended from the practice of law for one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
WEIMER, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by WEIMER, J.
VICTORY, J., dissents and assigns reasons.
VICTORY, J., dissents.
I agree with much of Justice Weimer's dissent and would impose a more serious sanction than one year and a day.
WEIMER, J., dissents.
I acknowledge this matter presents itself in a unique posture given this is a attorney disciplinary proceeding for conduct occurring while respondent was serving as a Judge.
I suggest the sanction of a year and a day suspension is inadequate. Respondent *1074 was previously suspended for a year for smoking marijuana and associating with prostitutes, users, and sellers of illegal drugs and an individual charged with a felony. See In Re: Whitaker, 463 So.2d 1291 (La.1985).
I am convinced an error was made in the finding by the hearing committee that the respondent's actions were not taken for personal gain and in the disciplinary board's finding of mitigation that the respondent lacked a "selfish motive."
In one matter, the respondent ordered the sheriff to retrieve the automobile of respondent's girlfriend from a local garage. Additionally, he essentially became the lawyer for the sheriff's office by dispensing legal advise on a continuous basis. In issuing the ex parte pronouncements, he simply relied upon the representations of the deputies. As such, respondent accommodated the sheriff and his deputies for whatever benefit he derived from those actions. He acknowledged engaging in this activity five hundred times during his eighteen-and-a-half years on the bench.
The potential for abuse is patently obvious where judicial directives are dispensed without notice and an opportunity to be heard in complete and utter disregard for concepts of due process and the restraints imposed on the judiciary.
Although I agree that a sanction should be imposed, I dissent because I believe the sanction imposed is inadequate.
NOTES
[1] The record contains copies of nine written directives from respondent to the sheriff's office issued between 1987 and 1996; however, in his sworn statement, respondent testified that he has "probably done this five hundred times in eighteen and a half years" on the bench.
[2] In July 2004, respondent voluntarily assumed inactive status as a lawyer pursuant to Supreme Court Rule XVIII.
[3] In 1985, respondent was suspended from judicial office for one year for smoking marijuana on two occasions after becoming a judge and for associating with prostitutes, users and sellers of illegal drugs, and an individual against whom felony criminal charges were pending. In re: Whitaker, 463 So.2d 1291 (La.1985).