968 So.2d 136 (2007)
In re David M. DICKSON.
No. 2007-B-0733.
Supreme Court of Louisiana.
November 7, 2007.

*137 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, David Meyer Dickson, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Dickson, 05-1498 (La.6/15/05), 903 So.2d 1129.

UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed three sets of formal charges against respondent, consisting of a total of five counts of misconduct. The charges were considered by separate hearing *138 committees, then consolidated by orders of the disciplinary board. The board then filed in this court a single recommendation of discipline encompassing all three sets of formal charges.

02-DB-056

The Crisp Matter
In November 1997, David Crisp retained respondent to represent him in a personal injury matter arising out of an automobile accident. In April 1998, respondent settled Mr. Crisp's claim for $15,000. Respondent deposited the settlement check into his operating account because he did not maintain a client trust account. Respondent paid Mr. Crisp his portion of the settlement and withheld the sum of $3,732 for payment of Mr. Crisp's medical expenses. Respondent later withdrew these funds from his operating account and placed the cash in a safe or "black box." Respondent did not pay Mr. Crisp's medical expenses until 2000, some two years after he received the settlement proceeds.
The ODC alleges that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(b) (failure to promptly remit client funds and failure to provide an accounting of client funds), 1.15(c) (failure to keep disputed funds separate from the lawyer's own funds), 1.15(d) (failure to maintain a client trust account), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

03-DB-073

Counts I & II The Lines Matter
In 2001, Ronald D. Lines hired respondent to represent him in a criminal matter. Respondent failed to communicate with Mr. Lines and failed to expedite the criminal case. Respondent also withdrew nearly $40,000 from Mr. Lines' bank accounts pursuant to a power of attorney;[1] however, respondent did not comply with Mr. Lines' requests for an accounting of these funds, nor did he comply with Mr. Lines' instructions as to the disbursement of the funds. Eventually, respondent paid $2,500 to Mr. Lines' son and $18,630 to the attorney who succeeded him as counsel for Mr. Lines. Respondent converted the remaining funds, $17,809.71, to his own use.
In 2002, Mr. Lines filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleges that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (failure to refund an unearned fee), 1.15(a), 1.15(b), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation).

05-DB-036

Count I & II-The Salinas Matter
In June 2002, David Salinas paid respondent $8,000 to represent him in a criminal *139 matter pending in St. Tammany Parish. Respondent told Mr. Salinas that if he paid him $18,000, he would pay off a judge and the district attorney to obtain a more lenient sentence of probation, and that Mr. Salinas would be able to return to his home in Texas. Tape and transcript evidence of this verbal exchange is in the record. Mr. Salinas reasonably believed respondent had political connections to arrange such a deal. When Mr. Salinas was unable to pay the full $18,000, respondent advised him to plead guilty and assured him he could arrange a deal of a five-year sentence on the guilty plea. Based on respondent's representations, Mr. Salinas pled guilty. However, rather than the five-year sentence respondent had promised him, Mr. Salinas received a ten-year sentence.
In 2004, Mr. Salinas filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleges that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.5(a) (a lawyer shall not seek to influence a judge, juror, or other official by means prohibited by law), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(c), and 8.4(d).

DISCIPLINARY PROCEEDINGS
Respondent answered the first and second sets of formal charges and denied any misconduct. Those matters then proceeded to hearings on the merits, which were conducted by separate hearing committees in 2003 and 2004.
Respondent failed to answer or otherwise reply to the third set of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration.

Hearing Committee Reports

02-DB-056
After considering the evidence and testimony presented at the hearing, the hearing committee found respondent violated the Rules of Professional Conduct as alleged in the formal charges by knowingly failing to maintain a client trust account and by failing to promptly pay a third-party medical provider. Upon considering the numerous aggravating factors and absence of mitigating factors, the committee recommended that respondent be suspended from the practice of law for two years, deferred with conditions.
The ODC objected to the leniency of the sanction recommended by the committee.

03-DB-073
After considering the evidence and testimony presented at the hearing, the hearing committee found respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee found that respondent knowingly failed to preserve Mr. Lines' funds and knowingly failed to provide Mr. Lines with an accounting for all of his funds. He also failed to adequately communicate with his client concerning the status of the criminal case and failed to expedite the litigation, despite Mr. Lines' specific requests to do so. This misconduct caused Mr. Lines significant injury. Based on these findings, and considering the numerous aggravating factors and absence of mitigating factors, the committee recommended that respondent be suspended from the practice of law for eighteen months.
*140 Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

05-DB-036
The hearing committee determined that the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Rule XIX, § 11(E)(3), and that respondent violated Rules 8.1(c), 8.4(c), and 8.4(d) as alleged in the formal charges. The committee found the ODC did not prove a violation of Rule 3.5(a), reasoning that there is nothing in the deemed admitted facts which suggests that respondent actually contacted or even attempted to contact the presiding judge or the district attorney regarding Mr. Salinas' criminal charges.[2] Nevertheless, it is clear that respondent told his client he could and would bribe public officials. Finding such conduct goes to the very heart of the legitimacy of our legal system, the committee recommended that respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation

02-DB-056, 03-DB-073 & 05-DB-036
The disciplinary board generally accepted the hearing committees' factual findings, reasoning that the findings are not manifestly erroneous and/or are supported by the factual allegations in the formal charges and evidence submitted in support of those allegations. The board further determined that the rule violations found by the committees are largely correct.[3] The board found that respondent's conduct was knowing and intentional and that he violated duties owed to his clients and the profession. Respondent exposed his clients and third parties to harm by depriving them of funds rightfully owed to them, and harmed a client and the profession by making misrepresentations which affected the outcome of a proceeding. The board also recognized that the disciplinary system has been harmed in that the ODC was forced to expend additional resources to obtain information for its investigation. Taking into account all of respondent's misconduct, the applicable baseline sanction is disbarment.
The aggravating factors found by the board include: prior disciplinary offenses,[4] dishonest or selfish motive, a pattern of misconduct, multiple offenses, failure to cooperate, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1978), vulnerability of the victims, and indifference to making restitution. The sole mitigating factor is the remoteness of respondent's prior disciplinary offense.
Considering the nature of the misconduct, the numerous aggravating factors, and the Rule XIX, Appendix E guidelines, the board found an upward deviation to permanent disbarment is warranted. The board cited Guideline 2 as particularly instructive. Guideline 2 provides that permanent disbarment may be warranted for "intentional corruption of the judicial process, including but not *141 limited to bribery, perjury, and subornation of perjury." Although the board could find no prior jurisprudence to support permanent disbarment specifically for a violation of Rule 8.4(e), the board found respondent's misconduct in the Salinas matter was unquestionably best described as "intentional corruption of the judicial process." Mr. Salinas was clearly misled, and chose to forego trial based on respondent's representations that he could influence the district attorney and the trial judge presiding over his criminal matter. Such misconduct caused severe damage to the profession in eroding the public's trust in the bar and the judiciary.
Based on this reasoning, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to provide an accounting and make restitution to Mr. Lines, and that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We find the record supports the factual findings of the hearing committees and the disciplinary board. We further find that respondent knowingly and intentionally violated the Rules of Professional Conduct by failing to maintain a client trust account, failing to timely pay third-party medical providers, neglecting legal matters, converting client funds, and improperly claiming that he could influence the judiciary.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The record demonstrates that respondent violated duties owed to his clients and to the profession, and caused harm to clients, the public, the legal system, and the profession. Considering respondent's misconduct as a whole, we believe the appropriate baseline sanction is disbarment.
Numerous aggravating factors present, including a prior disciplinary offense, dishonest or selfish motive, multiple offenses, vulnerability of the victims, substantial experience in the practice of law, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules and orders of the disciplinary agency, *142 indifference to making restitution, and illegal conduct. The only mitigating factor we can identify is the remoteness of respondent's previous disciplinary offense.
Under these circumstances, we see no reason to deviate from the baseline sanction of disbarment. Accordingly, the sole remaining inquiry is whether respondent's offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. See In re: Yaeger, 05-0035 (La.3/18/05), 897 So.2d 571.
Applying the guidelines to this case, we find respondent's misconduct in the Salinas matter falls within the spirit of Guideline 2, which applies to conduct involving the intentional corruption of the judicial process. Respondent sought a payment of money from his client, intentionally representing to his client that he had the ability to influence the judiciary. Although there is no evidence respondent actually attempted to improperly influence the judiciary, his actions clearly resulted in a corruption of the overall judicial process for his personal gain. This court will not countenance any actions by an attorney which suggest that the attorney can improperly influence the judiciary.
Based on our review of the record in this case, we conclude respondent lacks the fundamental honesty and moral fitness to practice law in this state. We can envision no circumstance in which we would readmit him to the bar. Accordingly, we must permanently disbar him.

DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that the name of David Meyer Dickson, Louisiana Bar Roll number 13815, be stricken from the roll of attorneys, and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to furnish complete accountings and full restitution to all persons subject of the formal charges. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Respondent obtained a power of attorney from Mr. Lines after suggesting to him that his funds might be seized by federal law enforcement authorities. Respondent withdrew $28,859.71 from Huntington Bank and $10,080 from Wells Fargo Bank pursuant to the power of attorney.
[2] Rather, the committee felt such conduct is more properly a violation of Rule 8.4(e), which prohibits a lawyer from stating or implying an ability to influence improperly a judge, judicial officer, governmental agency, or official.
[3] Notably, the board agreed that respondent's misconduct in the Salinas matter is more properly considered a violation of Rule 8.4(e), rather than a violation of Rule 3.5(a).
[4] In 1983, respondent was privately reprimanded by the Committee on Professional Responsibility for giving advice to a person who was not represented by an attorney and for threatening to present criminal charges to obtain an advantage in a civil matter.